OPINION OF THE COURT
Gabrielli, J.
In these three appeals, the District Attorneys of the Counties of Clinton, Dutchess and Ontario seek compensation in accordance with sections 183-a and 221-d of the Judiciary Law. We hold that the requirement of section 183-a that full-time District Attorneys in certain counties be paid at the same salary level as County Court Judges in their counties is not in conflict with the home rule provisions of article IX of the New York State Constitution, nor does section 7 of article XIII bar a midterm increase in the salary of these local officers. Hence, District Attorneys in counties falling within section 183-a are entitled to be compensated in accordance with its provisions both prospectively and retroactively to the date at which the counties ceased paying salaries equivalent to those of the County Court Judges.
*531 Relevant to all three appeals before us is a series of legislative enactments which gave rise to the present dispute. In 1969, the Legislature added subdivision 8 of section 700 of the County Law, requiring that the District Attorney in counties having a population greater than 100,000 devote full time to the duties of that office and prohibiting the District Attorney from otherwise engaging in the practice of law (L 1969, ch 415). The following year, subdivisions 9 and 10 were added to section 700, setting the minimum salary for District Attorneys in counties required to maintain the office as full time at $25,000 per annum and establishing a program of State aid pursuant to which those counties were paid $10,000 per annum to assist them in meeting the new salary requirement (L 1970, ch 733, § l).[1]
In 1974, the Legislature amended subdivisions 8 and 10 to allow counties having a population greater than 40,000 and less than 100,000 to designate the office of District Attorney as a full-time position and to provide State aid to those counties opting to do so (L 1974, ch 1049, §§ 1, 2).[2]
The minimum salary provision of subdivision 9 had been repealed in 1972 (L 1972, ch 946, § 1). At the same time, section 183-a was added to the Judiciary Law. This statute *532 requires that the District Attorney of each county having a population greater than 500,000[3] receive an annual salary at least equivalent to that of a Justice of the State Supreme Court and that the District Attorney of each county having a population greater than 100,000 but less than 500,000[4] receive an annual salary at least equivalent to that of the County Court Judge in the county of the District Attorney’s election or appointment (L 1972, ch 946, § 3). When the Legislature amended subdivisions 8 and 10 of section 700 of the County Law to allow counties having a population greater than 40,000 but less than 100,000 to opt to designate the office of District Attorney as full time, it also amended section 183-a of the Judiciary Law to require that the District Attorney in such counties be paid at least the same annual salary as that received by County Court Judges in the District Attorney’s county (L 1974, ch 1049, § 3).[5]
Pursuant to the State’s takeover of the judicial system, the Legislature, in 1979, provided for gradual increases in the salaries of County Court Judges throughout the State, retroactive to October 1, 1978 (L 1979, ch 55, § 2). These increases, set forth in section 221-d of the Judiciary Law, differ in amount for the various counties of the State.[6]
The salaries of the full-time District Attorneys of Clinton, Dutchess and Ontario Counties, although subject to *533 the requirement of section 183-a,[7] have not been maintained at levels equivalent to those of County Court Judges receiving increases pursuant to the 1979 legislation. The District Attorneys of those counties commenced separate article 78 proceedings to require that their salaries be made commensurate with the salaries of the County Court Judges in their counties, retroactive to October 1,1978, the date on which the Judges began receiving increases.[8]
The procedural background of the cases before us is as follows. In Matter of Harvey v Finnick, the Appellate Division, reversing Special Term and rejecting the constitutional challenges asserted by the county, granted the two petitions brought by the District Attorney. In Matter of Kelley v McGee, Special Term granted the District Attorney’s petition, relying upon the decision of the Appellate Division in Harvey, and a direct appeal by respondents pursuant to CPLR 5601 (subd [b], par 2) brings the case before this court. In Matter of King v Amodeo, Special Term granted the relief sought by the District Attorney, but the Appellate Division reversed and dismissed the petition, holding that the District Attorney is a State officer whose salary may not constitutionally be increased during his term of office (NY Const, art XIII, § 7).
Two State constitutional challenges are asserted to the requirement of section 183-a that District Attorneys’ salaries be maintained at a specific level. The first concerns the proscription contained in section 7 of article XIII of our State Constitution against midterm increases or decreases in the compensation of “the state officers named in this *534 constitution”.[9] This provision was first adopted in 1874 when it was added to the Constitution of 1846 and has been carried forward into successive Constitutions, with some changes in its language. Although the term “state officer” is nowhere defined in the Constitution, judicial interpretations of this provision have included within its scope Sheriffs (Hanley v City of New York, 260 App Div 552, affd 275 NY 482), registers (Albert v City of New York, 250 App Div 555, affd 275 NY 484), county clerks (Finn v City of New York, 282 NY 153) and, by logical extension of the rationale of these interpretations, District Attorneys (see Dodge v City of New York, 252 App Div 631, revd on other grounds 278 NY 25; 1924 Opns Atty Gen 119).
Thus, it is clear that when this provision was first adopted, the District Attorney was considered a State officer within the meaning of section 7 of article XIII, notwithstanding the fact that, for other purposes, the office was deemed local in nature (e.g., Fisher v State of New York, 10 NY2d 60 [District Attorney is not a State officer within the meaning of section 2 of the Public Officers Law so as to render the State liable for his tortious conduct]; Ritter v State of New York, 283 App Div 833 [same]; see Burke v Kern, 287 NY 203, 212 [Sheriff is a county officer, although also a State officer for some purposes]; Matter of Miller v State of New York, 279 NY 74, 77 [county register and employees of that office are not in State service for purposes of Workers’ Compensation Law]). We conclude, however, that more recent constitutional developments have operated to remove this office from its previous constitutional stature and that a District Attorney may no longer properly be considered a State officer.
Central to our determination that the office of District Attorney is to be treated as a local office is the significant change in the relationship between county and State gov *535 ernments brought about by the home rule provisions of our State Constitution. The Fearon Amendment, adopted and made a part of the Constitution in 1935, represents a major step in the direction of granting greater autonomy to county governments. Under this amendment, the Legislature was directed to provide alternative forms of county government. The Legislature carried out this direction by enactment of the Optional County Government Law in 1937,[10] which authorized counties to either maintain existing forms of government or adopt one of four other alternative forms provided therein. In connection with these options, counties were empowered to adopt certain variations concerning the offices of District Attorney, county clerk and Sheriff (Optional County Government Law, §§ 401, 403, 407, 408, 501, 503, 504). The Alternative County Government Law, enacted in 1952 to supersede the former law, provided even greater power in county governments over these essentially county offices, including the power to designate them as elective or appointive (Alternative County Government Law, § 58).
The Fearon Amendment was followed by the adoption of successive constitutional provisions which granted increasingly greater autonomy to local governments. The comprehensive home rule amendments of 1963 (set forth as article IX of the Constitution) evince a recognition that essentially local problems should be dealt with locally and that effective local self-government is the desired objective. Article IX contains a “Bill of rights for local governments” (NY Const, art IX, § 1), which, in addition to setting forth broad grants of general power to such bodies, specifically provides as follows: “Counties, other than those wholly included within a city, shall be empowered by general law * * * to adopt, amend or repeal alternative forms of county government provided by the legislature or to prepare, adopt, amend or repeal alternative forms of their own. Any such form of government or any amendment thereof, by act of the legislature or by local law, may transfer one or more *536 functions or duties of the county * * * to each other * * * or may abolish one or more offices, departments, agencies or units of government” (NY Const, art IX, § 1, subd [h], par [l]).[11]
The history of the constitutional home rule provisions demonstrates the evolution of county governments from their previous status as administrative arms of the State to their present status as more autonomous units of local government. The power granted to counties over the nature and functions of its local offices is a significant one, extending even to the power to abolish those offices under certain circumstances Westchester County Civ. Serv. Employees Assn. v Del Bello, 47 NY2d 886, revg on dissenting opn below 70 AD2d 604). In determining whether the office of District Attorney is a State or local office, the effect of such changes upon the status of county governments may not be ignored. Indeed, we believe that under the present constitutional framework, the characterization of a District Attorney as a State officer is conceptually incompatible with the broad authority afforded counties over their local offices by the home rule provisions. Accordingly, we conclude that a District Attorney should no longer be considered a “state officer” within the meaning of section 7 of article XIII of the Constitution.[12]
*537 This does not end our inquiry, however, for the counties also challenge the Legislature’s authority to set the salaries of District Attorneys, arguing that such legislation impinges upon the broad powers of home rule afforded local governing bodies. Article IX of the Constitution, as noted above, grants to local governments significant power and authority to act with respect to local matters. There are limitations upon those powers, however, and substantial authority is reserved to the Legislature to act in matters touching upon local concerns. Thus, the Legislature has the “power to act in relation to the property, affairs or government of any local government only by general law,” although it may also so act by special law under limited circumstances (NY Const, art IX, § 2, subd [b], par [2]). However, nothing in article IX is intended to impair the power of the Legislature to act in relation to “[m]atters other than the property, affairs or government of a local government” (NY Const, art IX, § 3, subd [a], par [3]).
The precise question before us, then, is whether the subject matter of section 183-a falls within the competence of the State Legislature by virtue of the powers reserved to it under article IX. The statute effects a classification of counties into four groups, based upon their population; (1) counties having a population greater than 500,000, District Attorneys of which must be paid an annual salary equivalent to that received by State Supreme Court Justices; (2) counties having a population greater than 100,000 but less than 500,000, District Attorneys of which must be paid at the same level as County Court Judges in their counties; (3) counties having a population greater than 40,000 -but less than 100,000 that have opted to designate the District Attorney’s office full time,' District Attorneys of which must also be paid at the salary level of County Court Judges; and (4) by implication, counties having a population less than 40,000, in which the payment of the District Attorney’s salary is unaffected by the statute. The counties argue that the statute is invalid as a “special law”, which is defined in the Constitution as a “law which in terms and effect applies to one or more, but *538 not all, counties” (NY Const, art IX, § 3, subd [d], par [4]).[13] This argument, however, misperceives the nature of the authority under which the Legislature has acted.
It is well established that the home rule provisions of article IX do not operate to restrict the Legislature in acting upon matters of State concern. In questioning whether a challenged statute involves a matter other than the property, affairs or government of a municipality, this court has consistently analyzed the issue from the standpoint of whether the subject matter of the statute is of sufficient importance to the State generally to render it a proper subject of State legislation. Sufficient State-wide importance has been found in State legislation the subject matter of which concerned the public health and safety of the people of the City of New York (Adler v Deegan, 251 NY 467 [upholding the Multiple Dwelling Law against a claim that it violated the city home rule provisions of the Constitution]), payment by the City of New York of its mandatory retirement or pension liabilities (Bugeja v City of New York, 24 AD2d 151, affd 17 NY2d 606), the protection of the resources of the Adirondack Park region (Wambat Realty Corp. v State of New York, 41 NY2d 490), the preservation of financially troubled cultural institutions and museums of the State (Hotel Dorset Co. v Trust for Cultural Resources of City of N. Y., 46 NY2d 358), and the residential mobility of members of the civil service (Uniformed Firefighters Assn. v City of New York, 50 NY2d 85). Clearly arising from these cases is the principle that in areas of State-wide significance, the State may freely legislate, notwithstanding the fact that the concern of the State may also touch upon local matters (Wambat Realty Corp. v State of New York, supra, at p 494). Thus, such State legislation which also affects local concerns does not implicate local governmental home rule powers (Uniformed Firefighters Assn. v City of New York, supra, at p 90).
Analysis of these cases leads us ineluctably to the conclusion that the subject matter of section 183-a is a *539 proper concern of the State. Our determination herein that the constitutional role of county government has evolved to a point at which its officers may no longer be deemed State officers for purposes of the Constitution’s ban on midterm salary increases establishes that a local concern is implicated in section 183-a.[14] It does not necessarily follow from that determination, however, that the State does not have a sufficiently important interest in the salaries which District Attorneys are paid to allow it to legislate on this subject matter. It is obvious that the office of District Attorney, having as its responsibility the enforcement, on a local level, of the penal laws of this State and the representation of the people of this State in criminal matters arising within the county, is a matter of concern to the State (cf. the purely local concerns presented in such cases as Matter of Osborn v Cohen, 272 NY 55 [term “property, affairs or government” includes matters relating to organization and control of fire department]; Matter of Resnick v County of Ulster, 44 NY2d 279 [method of filling vacancies in the offices of county legislator is local concern]). As the Appellate Division noted in Matter of Harvey v Finnick (88 AD2d 40, 43), the purpose of section 183-a is “to maintain the security and independence of District Attorneys, and to assure that persons of high standing and integrity remain in their position. The Legislature recognized that it was not equitable to require full-time District Attorneys to forego private practice while at the same time having their salaries frozen at inadequate levels. By providing minimum salaries equivalent to Judges of the County Court, the office of District Attorney would attract the best available attorneys, and diminish the exodus of District Attorneys to the County Court Bench” (citations omitted). These objectives behind the statute demonstrate the strength of *540 the State’s interest in maintaining the salaries of District Attorneys at an acceptable level.[15]
Once a statute is found to involve an appropriate level of State interest, the fact that it effects a classification among the local governments it regulates does not render the enactment invalid, so long as that classification is reasonable and related to the State’s purpose (Hotel Dorset Co. v Trust for Cultural Resources of City of N. Y., supra; Uniformed Firefighters Assn. v City of New York, supra). Classifications based upon the population of members of the class have long been held reasonable (e.g., Farrington v Pinckney, 1 NY2d 74). The Legislature’s choice to impose minimum salary requirements for District Attorneys upon counties depending upon their size comports with logic and common sense. It is entirely reasonable to assume that the greater the population in a county, the greater will be its need for a full-time District Attorney as well as its ability to pay that officer an adequate salary.
Thus, we conclude that section 183-a of the Judiciary Law suffers no defect under the Constitution of this State. Accordingly, in Matter of Kelley v McGee, the judgment of Supreme Court, Clinton County, should be affirmed, with costs. In Matter of King v Amodeo, the order of the Appellate Division should be reversed, with costs, and the judgment of Supreme Court, Dutchess County, should be reinstated. In Matter of Harvey v Finnick, the orders of the Appellate Division should be affirmed, with costs.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Fuchsberg and Meyer concur.
In Matter of Kelley v McGee: Judgment affirmed, with costs.
In Matter of King v Amodeo: Order reversed, with costs, and judgment of Supreme Court, Dutchess County, reinstated.
*541 In Matter of Harvey v Finnick: Orders affirmed, with costs.

. The Counties of New York, Bronx, Kings, Queens and Richmond were excepted from the minimum salary requirement set by subdivision 9, but these counties were included in the program of State aid.

. Subdivision 8 was amended in 1978 to include Essex County among those counties required to have a full-time District Attorney (L 1978, ch 419, § 1). Subdivision 8 now reads as follows: “The district attorney of a county having a population of more than one hundred thousand according to the last federal census and the district attorney of Essex county and any county having a population of more than forty thousand but less than one hundred thousand according to the last federal census, the board of supervisors of which has designated such office as a full-time position, shall give his whole time to his duties and shall not engage in the practice of law, act as an arbitrator, referee or compensated mediator in any action or proceeding or matter or engage in the conduct of any other profession or business which interferes with the performance of his duties as district attorney.” Subdivision 10 provides: “There is hereby established a program of state aid to all counties having a population of more than one hundred thousand according to the last federal census, to any county, the board of supervisors of which has designated the office of district attorney as a full-time position pursuant to subdivision eight of this section and to the city of New York for the salaries of district attorneys of such counties and the counties within such city at the rate of ten thousand dollars per annum. No such state aid shall be paid with respect to any district attorney who has not complied with subdivision eight of this section.”

. The Counties of New York, Bronx, Kings, Queens and Richmond were excepted from this requirement.

. The County of Richmond was excepted from this requirement.

. Section 183-a of the Judiciary Law now reads as follows: “Notwithstanding any other provision of law, the district attorney of each county having a population of more than five hundred thousand according to the last federal census, exclusive of the counties of New York, Bronx, Kings, Queens and Richmond, shall receive an annual salary equivalent to that of a justice of the state supreme court together with such additional compensation as the legislative body of such county may provide by local law. Further, that the district attorney of each county having a population of more than one hundred thousand and less than five hundred thousand according to the last federal census, exclusive of the county of Richmond, and the district attorney of any county, the board of supervisors of which has designated such office as a full-time position pursuant to subdivision eight of section seven hundred of the county law, shall receive an annual salary equivalent to that of county judge in the county in which the district attorney is elected or appointed, together with such additional compensation as the legislative body of such county may provide by local law.”

. 1980 legislation provides for further increases in the salaries of State-paid Judges and Justices of the Unified Court System (L 1980, ch 881, § 14).

. Clinton County designated the office of District Attorney a full-time position by resolution dated and adopted June 11, 1975. Ontario County opted to do the same by Local Law No. 2 of 1975. Dutchess County having a population greater than 100,000 and less than 500,000, is required by the terms of the County Law to maintain a full-time District Attorney.

. The District Attorneys of Clinton and Ontario Counties are still receiving a salary lower than that of County Court Judges in their respective counties. The Dutchess County District Attorney, however, since the commencement of his most recent term of office (January 1, 1982), now receives a salary commensurate with that of the County Court Judges of his county. He therefore seeks only past salary allegedly due him "by reason of the county’s failure to comply with section 183-a.

. Section 7 of article XIII provides, in full, as follows: “Bach of the state officers named in this constitution shall, during his continuance in office, receive a compensation, to be fixed by law, which shall not be increased or diminished during the term for which he shall have been elected or appointed; nor shall he receive to his use any fees or perquisites of office or other compensation.”

. The Optional County Government Law was largely repealed and superseded by the Alternative County Government Law effective in 1954 (L 1952, ch 834).

. Also in existence at this time was article XIII (§ 13, subd [a]), which provided that: “Except in counties in the City of New York and except as authorized in section one of article nine of this constitution [quoted in text above], sheriffs, clerks of counties and district attorneys * * * shall be chosen by the electors of the respective counties once in every three years”. This provision reinforces the broad grant of authority in counties over their local offices. A 1972 amendment removed the office of District Attorney from the exception clause and the subdivision currently provides that District Attorneys are to be chosen by the electors once in every three or four years as the Legislature shall direct. It is argued that the purpose of this amendment was merely to provide greater flexibility in designating the term of office of District Attorneys. Whatever may have been its purpose, however, we do not read it to restrict the grant of authority contained in section 1 of article IX.

. This conclusion is further buttressed by the language of article XIII (§ 13, subd [c]) of the Constitution, which states that the City of New York may abolish the “office of any county officer within the city other than judges, clerks of counties and district attorneys”. It is certainly worthy of note that the only specific reference in the Constitution to the nature of the office of District Attorney as State or local is phrased in terms implicitly recognizing its character as local, or county, in nature.

. The converse, a “general law” is defined as one “which in terms and effect applies alike to all counties” (NY Const, art IX, § 3, subd [d],- par [1]).

. We recognize that article IX (§ 2, subd [cl, par [ii], cl [1]) specifically grants power to local governments over the compensation of their officers. However, this power is limited to the enactment of local laws which are not inconsistent with any general law relating to that subject (City of Amsterdam v Helsby, 37 NY2d 19). Inasmuch as we conclude that section 183-a is a valid State enactment on this subject, it may not be superseded by local legislation in conflict with it.

. Although section 201 of the County Law places the authority to fix the salaries of officers paid from county funds in the board of supervisors, it must be deemed impliedly repealed by the later-enacted section 183-a of the Judiciary Law, only to the extent that the two laws are in conflict.